RECEIVED

AUG 0 2 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CALVIN AARON | CIVIL ACTION NO. 04-1018 |
| versus | JUDGE HICKS<br>**REFERRED TO:** |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

**Introduction**

Calvin Aaron ("Plaintiff") first applied for disability benefits in 1992. After lengthy proceedings, this court affirmed a denial of benefits in a 1998 ruling. In the meantime, Plaintiff filed another application in 1996 that, after an Appeals Council remand and two hearings before an ALJ, has also arrived in this court.

Plaintiff was forty years old when ALJ Lawrence Ragona denied his claim in January 2002. Plaintiff has a high school education and past work experience as an employee at a vocational technical school, a septic tank installer and a rotary drill helper. He alleges he became disabled in 1991 due to lower back pain. Because of principles of *res judicata* associated with the first application, the relevant period in this proceeding begins September 27, 1995.

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and Section

416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). The ALJ found Plaintiff was not working (step one) and had degenerative disk disease of the lumbar and cervical spine, tendonitis of the shoulders with impingement syndrome, and tendonitis of the right shoulder, a combination of impairments that is severe (step two) within the meaning of the regulations, but not severe enough to meet or medically equal a listed impairment (step three) that would result in a finding of disabled.

The ALJ next found that Plaintiff had the residual functional capacity ("RFC") to lift and carry fifteen pounds occasionally and up to ten pounds frequently, stand and walk one hour at a time up to a total of five hours in a work day, and sit one hour at a time up to a total of five hours in a work day. He also found that Plaintiff could not perform any over-the-shoulder work. The ALJ's written decision states in two places (Tr. 442 and 445) that he found Plaintiff can lift and carry fifteen pounds occasionally and up to ten pounds *occasionally*, but this is apparently a drafting error, with the lower weight intended to be the amount that the claimant may lift and carry *frequently*. That would be consistent with the regulations and the ALJ's oral description of the RFC at the hearing. Tr. 1025-26. Neither party has suggested otherwise.

That RFC did not permit Plaintiff to perform his past relevant work (step four), so the ALJ proceeded to step five, which asks whether there are other jobs available in significant numbers that a claimant with that RFC and Plaintiff's vocational factors could perform.

Plaintiff was found to be incapable of performing the full range of light work. If he had been able to perform the full range of light work, the ALJ observed, his vocational factors would result in Medical-Vocational Rule 202.21 directing a finding of not disabled. The rule was inapplicable under the circumstances, so the ALJ asked Vocational Expert ("VE") Harris Rouse if there were jobs available that such a person could perform. The VE identified cashier, general office clerk, accounting clerk and adjuster as jobs such a person could perform. Based on that testimony, the ALJ found that Plaintiff was not disabled.

The Appeals Council denied a request for review. Plaintiff filed this judicial appeal pursuant to 42 U.S.C. § 405(g). He asserts two errors: (1) the ALJ did not afford appropriate consideration to the opinions of treating and certain consulting physicians and (2) the ALJ's hypothetical questions to the VE did not result in the identification of jobs that Plaintiff can perform. The parties filed written consent to have a magistrate judge decide the case. Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court, the case was automatically referred to the undersigned for decision.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925

F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Assessment of Physicians' Opinions**

Plaintiff complains that the ALJ did not afford appropriate consideration to the statements of certain physicians who have treated or examined Plaintiff. The ALJ's written decision reflects a careful and detailed consideration of each of the relevant medical opinions. Dr. John Sandifer, an orthopedic surgeon, conducted consultative examinations of Plaintiff in 1993, 1997 and 2000. He recorded at the first visit that Plaintiff had injured his back in 1980 while working offshore. Plaintiff did not have surgery, and no definite herniated disk was found. He complained of pain in his back with extension and lateral bending, but his neurological exam was "completely normal" and x-rays showed "no significant abnormalities." On examination, straight leg raises produced back pain at about seventy degrees but did not produce hip or leg pain. Plaintiff had "slightly decreased reflexes" at both heels. Dr. Sandifer opined that Plaintiff should avoid repetitive bending at the waist or lifting over thirty to forty pounds on a repetitive basis. He also said Plaintiff should not sit for more than five hours per work day. Dr. Sandifer added that he "really can find no other objective evidence of any orthopedic problems at this point in time." Tr. 763. The ALJ gave "significant weight" to that opinion, noting that it was based on a thorough physical examination and was consistent with objective medical evidence. Tr. 437.

Dr. Sandifer saw Plaintiff again in 1997. Once again, x-rays showed no significant abnormalities, there was no muscle spasm, and straight leg raise test produced back pain only on the right side at ninety degrees. The neurological exam, including reflexes, was normal. Dr. Sandifer suggested similar lifting restrictions and said, in what appears to be a typographical or drafting error, that Plaintiff cannot sit for more than an hour and a half to two hours *in a day* and no more than six hours in a work day. Tr. 778. (The italicized language was likely intended to be "at a time" rather than in a day.) The ALJ noted the probable error and gave "no weight" to the opinion evidence offered in the report, but he said he would rely on the objective medical evidence obtained during the examination. Tr. 438. Notably, the 1997 exam indicated a better condition than was found in 1993.

Dr. Sandifer saw Plaintiff again in 2000. He reported that since the 1997 exam, Plaintiff was having more problems with his lower back and right hip and leg. Dr. Sandifer said he had seen Plaintiff once in the office for severe muscle spasms in his neck. X-rays showed no significant abnormalities of the lumbar spine but a moderate decrease in the C6-7 disk space. A neurological exam, including reflexes, appeared to be normal. There was some tenderness along the shoulders and in the right elbow. Grip strength was eight on the right and eighteen on the left. Straight leg raise test was positive at ninety degrees on the right. Plaintiff had some reduced range of motion in the back. Dr. Sandifer opined that Plaintiff could not do a job that required repetitive overhead lifting, and below-shoulder lifting would be restricted to no more than fifteen to twenty pounds. He found that Plaintiff

could both sit and stand for up to an hour at a time and up to five hours in a work day. He added that Plaintiff should avoid repetitive stooping, crawling and climbing. Tr. 829-30. The ALJ found this opinion consistent with the objective medical evidence and deemed it to give a fair consideration to the claimant's subjective complaints of pain, so "great weight" was afforded the opinion. Tr. 438.

Dr. Charles Armistead conducted a consultative neurological examination of Plaintiff in 1995. He opined that Plaintiff's difficulties were primarily orthopedic in origin, and his findings were "insufficient to diagnose neurological disease." He added an opinion that Plaintiff "seems to be completely sincere in the chronicity and severity of his symptoms." Tr. 773-74. The ALJ acknowledged this report but, with respect to the opinion on the claimant's sincerity, noted that it is the purview of the ALJ to assess the claimant's credibility. Tr. 437.

Dr. Robert Holladay conducted a consultative orthopedic examination in 1995. He found mild spasms over the lumbar spine, and straight leg raising caused back and hip pain at seventy degrees. Grip strengths were 5/5 and equal. No atrophy was noted in either leg, and x-rays of the spine revealed no evidence of spur formation, with some mild disk space narrowing at L4-L5 and L5-S1. Facet joints had minimal degenerative changes. Dr. Holladay diagnosed chronic low back pain and mild degenerative disk disease of the lumbar spine. He opined that Plaintiff could not perform work that required lifting and carrying more than ten to fifteen pounds on a frequent basis and no more than twenty to twenty-five

pounds on an occasional basis. He suggested that sitting was restricted to periods of thirty minutes at a time, with a total of five hours in a work day. He suggested that standing and walking should be restricted to periods of fifteen to twenty minutes at a time, with a total of three to four hours in a work day. He found that reaching and working overhead was possible, but he said Plaintiff could not use foot controls or pedals, and climbing, crawling, etc. would be totally restricted. Tr. 771-72.

The ALJ found Dr. Holladay's opinion regarding the claimant's ability to lift and carry to be "generally consistent" with the objective medical evidence. He did not, however, find that the objective evidence supported the degree of restriction on sitting, standing and walking that was suggested by Dr. Holladay. He concluded that those opinions were based on the claimant's subjective reports of difficulty with postural activities. Because the objective findings were more consistent with the limitations suggested in Dr. Sandifer's 1993 opinion, the ALJ gave only "moderate weight" to Dr. Holladay's opinions. Tr. 438.

An ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). To this point, the ALJ's assessment of the relative weight of the opinions offered by the consulting physicians is well supported by the objective findings of those physicians and the articulation of sound reasons by the ALJ. There are, however, opinions from two treating physicians that Plaintiff suggests are more persuasive.

Plaintiff's attorney referred him to Dr. Garland Miller, a general practitioner. Dr. Miller completed medical assessment forms in 1995, 1996 and 1998. Each opinion limited Plaintiff to lifting ten pounds and found other significant limitations in Plaintiff's ability to sit, stand and walk. Each of the forms asked, with respect to each limitation imposed: "What are the medical findings that support this assessment?" On the first form, Dr. Miller wrote only "DJD L spine." Tr. 374-75. He listed no findings whatsoever on the other two forms that he completed. Tr. 793-94 and 814-15. Dr. Miller's testimony was taken by a deposition conducted by Plaintiff's counsel but with no representative of the Commissioner present. Tr. 302. Dr. Miller testified that he has treated Plaintiff for hypertension (moderately controlled by medication) and has diagnosed Plaintiff with depression, for which he has prescribed a medication. As for back problems, he testified that Plaintiff has degenerative disk disease and degenerative changes of the vertebral bodies at L4, L5 and S1 that would be aggravated by bending, twisting, extended sitting or standing and other activities. Dr. Miller conceded he had to rely upon what Plaintiff told him with respect to the pain Plaintiff was suffering, but he said he had no reason to doubt Plaintiff. Tr. 312. When asked if there were objective reasons for Plaintiff to have the pain that he complained of, Dr. Miller simply stated: "I believe his complaints about his back." Tr. 313. He then added references to past medical records, including the evaluation by Dr. Sandifer and his own observation of Plaintiff's movements in his presence. Tr. 313.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. See also Perez v. Barnhart, ___ F.3d ___, 2005 WL 1540802 (5th Cir. 2005).

The ALJ reduced the weight he afforded Dr. Miller's opinions because (1) the suggested limitations were not supported by medically acceptable clinical and laboratory diagnostic techniques such as the x-rays taken, (2) the lack of explanation as to the asserted disproportionate impact on the claimant's abilities, (3) the reliance on the claimant's subjective reports (which the ALJ found to be out of line with objective medical evidence), (4) the orthopedic specialties of the consulting physicians as opposed to Dr. Miller's general practice, and (5) the inconsistency of Dr. Miller's opinion with those of the orthopedic specialists. For those reasons, the ALJ gave "little weight" to Dr. Miller's opinions. The ALJ's assessment of that evidence may not be the only correct one, and reasonable minds

might differ, but his articulation of reasons provides a sound basis and good cause for his decision, which permits it to withstand judicial scrutiny.

Plaintiff was also treated by Dr. Otis Barnum, a specialist in internal medicine. Dr. Barnum prepared a medical assessment form in 2000 that indicated Plaintiff was restricted to occasional lifting of up to fifteen pounds (at shoulder level or lower) and no weight on a frequent basis. He indicated that Plaintiff could stand/walk only five hours per work day, and sitting was subjected to a similar limitation. Tr. 840-42. Dr. Barnum also offered deposition-style testimony. Tr. 852-84. He testified that Plaintiff "seemed very credible" to him, and he believed plaintiff had given a consistent medical history to the various examining physicians. Tr. 856-57. He also said he believed his RFC assessment was "fairly close" to the findings by other physicians. Tr. 858.

The ALJ discounted the weight to be afforded Dr. Barnum's opinions for reasons similar to those assigned with respect to Dr. Miller's reports. He pointed to the lack of objective findings, the reliance on subjective reports out of proportion with the objective evidence, the conflicting reports from orthopedic specialists, and the physician's reliance on the credibility of the claimant. Tr. 440. Once again, reasonable minds might differ with regard to the amount of weight that should be afforded Dr. Barnum's opinions, but the ALJ articulated legitimate and rational reasons for his choices among the various medical opinions. His election to side with consultative orthopedic specialists over treating general

practitioners is permissible in this case for the reasons provided in the ALJ's well-written decision.

Plaintiff also faults the ALJ for not conducting the full-blown analysis described in Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) when assessing the opinions of the treating physicians. The ALJ's decision appears to have adequately taken into consideration the six factors required by the regulation discussed in Newton. See Tr. 439-40. Furthermore, the full six-factor review is required only when there is an absence of competing first-hand medical evidence. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003).

**VE Hypothetical**

Plaintiff's second assignment of error states that the "hypotheticals presented to the Vocational Expert by the Social Security Administration did not identify any jobs in the economy that [Plaintiff] could perform." Plaintiff does not point to any defect in the form of the question or complain that it did not include all limitations found by the ALJ. It appears, from the argument under the heading, that Plaintiff simply disagrees with the VE's suggestion that Plaintiff could actually perform the jobs the VE identified.

The VE was first asked to assume a claimant of Plaintiff's vocational factors and the ability to lift and carry twenty pounds occasionally and ten pounds frequently. The person could stand and walk (and sit) up to five hours in a work day, about one hour continuously.

He was also unable to do over-the-shoulder work. The VE identified cashier, bartender and general office clerk as available jobs for such a person. Tr. 1025.

The ALJ then asked if it would significantly impact the number of available jobs if the person were able to lift no more than twenty to fifteen pounds occasionally. That question is the one consistent with Plaintiff's RFC (as ultimately found by the ALJ). The VE said that it would not. Those jobs are generally categorized by the Dictionary of Occupational Titles ("DOT") as light work, which requires a slightly greater ability to stand/walk and sit than Plaintiff's RFC permits. Light work also requires up to twenty pounds of lifting on an occasional basis. On cross-examination, the VE testified that the jobs he identified could be performed by the hypothetical person despite the light work designation in the DOT. The VE was then asked to assume an RFC for sedentary work (ten pounds occasionally and sit 5/1 and stand/walk for 3/1) with no over-the-shoulder work. He testified that such a person could perform a number of jobs such as cashier, bookkeeper, accounting clerk and adjuster. Tr. 1027. The ALJ relied on that testimony for his step-five decision. Tr. 444. Plaintiff made some good points on cross-examination with respect to the suggestion of light work jobs that could be performed, but the final question to the VE about the sedentary jobs has not been attacked, and the VE's answer to the question provides substantial evidence for the decision that Plaintiff could perform such jobs.

Plaintiff points to reports from Richard Galloway, Ph.D., a vocational rehabilitation counselor. Dr. Galloway, based on restrictions imposed by Dr. Sandifer and "particularly"

Dr. Miller, concluded there were no jobs that Plaintiff could perform. Tr. 295. See also Tr. 365-66. Dr. Galloway's conclusion was based on the most serious limitations suggested by those two physicians rather than the RFC determined by the ALJ, so his opinion does not undermine the VE's testimony.

**Conclusion**

Plaintiff obviously was injured and experiences a degree of pain and limitations on his abilities. Physicians have offered differing opinions on the extent of those limitations. The ALJ has thoroughly reviewed the medical evidence and chosen, for reasons that he well articulated, to credit some of the medical opinions over those of others. The reasons he provided are adequate to withstand the limited judicial scrutiny permitted by Section 405(g). Accordingly, a judgment will be entered affirming the Commissioner's decision to deny benefits.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 2nd day of August, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE